# EXHIBIT B

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael G. Olinik (SBN # 291020)<br>The Law Office of Michael G. Olinik, 501 W. Broadway, Ste. 800, San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 780-5523          FAX NO. :<br>EMAIL ADDRESS: michael@oliniklaw.comm<br>ATTORNEY FOR *(Name):* Ronald A. Marron | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/18/2024** at 02:18:08 PM<br><br>Clerk of the Superior Court<br>By Amanda Gidron,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Diego**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central Division - Hall of Justice

CASE NAME:

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2024-00006839-CU-BC-CTL |
| | | | | JUDGE: Judge Joel R. Wohlfeil<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [x] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 9, Breach of Contract, Fraud X 3, Negligence X 2, Promissory Estoppel, UCL, Reformation
5. This case [ ] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 17, 2024
Michael G. Olinik
_____     ▶  _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 W Broadway<br>MAILING ADDRESS: 330 W Broadway<br>CITY AND ZIP CODE: San Diego CA 92101-3827<br>BRANCH NAME: Central | |

| Short Title: Marron vs JPMorgan Chase Bank NA [IMAGED] | |
|---|---|

| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | CASE NUMBER:<br>37-2024-00006839-CU-BC-CTL |
|---|---|

San Diego Superior Court has reviewed the electronic filing described below. The fee assessed for processing and the filing status of each submitted document are also shown below.

**Electronic Filing Summary Data**

| | |
|---|---|
| Electronically Submitted By: | Michael Olinik |
| On Behalf of: | Ronald Marron |
| Transaction Number: | 21936328 |
| Court Received Date: | 01/18/2024 |
| Filed Date: | 01/18/2024 |
| Filed Time: | 02:18 PM |
| Fee Amount Assessed: | $435.00 |
| Case Number: | 37-2024-00006839-CU-BC-CTL |
| Case Title: | Marron vs JPMorgan Chase Bank NA [IMAGED] |
| Location: | Central |
| Case Type: | Breach of Contract/Warranty |
| Case Category: | Civil - Unlimited |
| Jurisdictional Amount: | > 35000 |

| **Status** | **Documents Electronically Filed/Received** |
|---|---|
| Accepted | Complaint |
| Accepted | Civil Case Cover Sheet |
| Rejected | Original Summons |

RejectReason 1: Other

Comments to submitter 1: All names listed on the Complaint must match exactly on the Summons. The Plaintiff does not match. Please review electronic filing requirements and correct. Thank you.

**Comments**

**Clerk's Comments:**
**Events Scheduled**

| Hearing(s) | Date | Time | Location | Department |
|---|---|---|---|---|
| Civil Case Management Conference | 07/19/2024 | 01:30 PM | Central | C-73 |

**Electronic Filing Service Provider Information**

Service Provider:        Green Filing
Email:                   support@efilinghelp.com
Contact Person:          Green Filing, LLC Support
Phone:                   (801) 448-7268

Michael G. Olinik    SBN # 291020
The Law Office of Michael G. Olinik
501 W. Broadway, Suite 800
San Diego, CA 92101
(619) 780-5523
michael@oliniklaw.com

Attorney for Plaintiffs Ronald A. Marron

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**01/18/2024** at 02:18:08 PM
Clerk of the Superior Court
By Amanda Gidron,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO
## CENTRAL DIVISION

| | |
|---|---|
| RONALD A. MARRON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a national banking association, and DOES 1-10, INCLUSIVE,<br><br>Defendant. | Case No: 37-2024-00006839-CU-BC-CTL<br><br>**COMPLAINT FOR:**<br><br>(1)  BREACH OF CONTRACT;<br><br>(2)  FRAUD IN THE INDUCEMENT;<br><br>(3)  FRAUDULENT MISREPRESENTATION;<br><br>(4)  FALSE PROMISE;<br><br>(5)  NEGLIGENT MISREPRESENTATION;<br><br>(6)  PROMISSORY ESTOPPEL;<br><br>(7)  NEGLIGENCE;<br><br>(8)  VIOLATION OF THE UNFAIR COMPETITION LAWS; and<br><br>(9)  REFORMATION<br><br>UNLIMITED CIVIL ACTION<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Ronald A. Marron alleges against Defendant JPMorgan Chase Bank, N.A. ("Chase"), a national bank, the following upon his own personal knowledge, or where there is no personal knowledge, upon information and belief.

## I. <u>INTRODUCTION</u>

1.    In the midst of rising interest rates, mortgage lenders began offering rate lock agreements to potential homeowners to purportedly protect the homeowners by locking in an interest rate for a certain period of time, giving the homeowners the opportunity to look for a property without worrying about the interest rate on the mortgage going up.  Of course, the lenders did not do this out of the kindness of their hearts but instead charged customers a fee for these agreements, one that would be non-refundable even if the mortgage was never consummated.

2.    When Chase offered a rate lock to Mr. Marron, they included a representation of what his interest rate would be, including what discount points would be included in the locked rate, which included an assessment of all the discount points Mr. Marron was entitled to.   Based on those representations, Mr. Marron agreed to enter into the "Lock In Agreement" and paid the fee for the Lock In Agreement.

3.    After entering the Lock In Agreement, Chase then reviewed Mr. Marron's discount points.  Nothing had changed regarding Mr. Marron's accounts, yet Chase unilaterally decided that one of the accounts Mr. Marron had with Chase would no longer count towards discount points.  Thus, despite the Lock In Agreement, Chase charged Mr. Marron a higher interest rate than he paid for in the Lock In Agreement.  This costs Mr. Marron thousands of dollars over the life of the loan, and as the transaction was nearly complete, Mr. Marron was unable to shop for a different mortgage went purchasing the Property.  This action seeks to recover the difference in the money Mr. Marron has spent to date and seeks to reform the note and deed of trust to reflect the promised interest rate.

## II. <u>JURISDICTION AND VENUE</u>

4.    Pursuant to Article VI, § 10 of the California Constitution, subject matter jurisdiction is proper in the Superior Court of California, county of San Diego.

5.      The amount in controversy under this Complaint exceeds the jurisdictional minimal jurisdictional limit of this Court, and the claims asserted in this Complaint are within the subject-matter jurisdiction of this Court, as the mortgage at issue is valued at over $25,000.

6.      This Court has personal jurisdiction over Defendant because it is an association, corporation, limited liability company, business entity, national association, and/or person that resides in, are based in, authorized to, and/or registered to conduct, and in fact do conduct, substantial business in the state of California, county of San Diego.

7.      Venue is proper in this Court because material acts upon which this Complaint is based upon occurred in the county of San Diego, and because Defendant conducts substantial business, holds significant contacts, operate business facilities, and entered into a contract with Plaintiff within the state of California, county of San Diego.

### III.  **PARTIES**

8.      Plaintiff Ronald Marron, a natural person, is, and at all times mentioned herein was, a resident and citizen of the state of California.

9.      Defendant JPMorgan Chase Bank, N.A., is a national bank with its principle place of business located in New York, New York.

10.     The true names and capabilities, whether individual, corporate, associate, or otherwise, of the Doe Defendants 1 through 10, are unknown to Plaintiffs, and therefore sue these Doe Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when the same has been ascertained.

11.     Plaintiffs are informed and believe, and based thereon allege, that each of the Doe Defendants were, or are, in some way or manner, responsible and liable to Plaintiffs and Class Members for the events, happenings, and damages hereinafter set forth in the body of this Complaint. Plaintiffs are informed and believe, and based thereon allege, that said Doe Defendants may be responsible for the damages and injuries suffered by Plaintiffs and Class Members on alternative theories of liability not specifically addressed herein.

*Marron v. JPMorgan Chase Bank, N.A.*
COMPLAINT

12.     Plaintiffs are informed and believe, and based thereon allege, that Defendants, and each of them, were, and are, an owner, co-owner, agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acted, and continue to act, on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were, at all times material hereto, acting within the course and scope of their authorities as an owner, co-owner, agent, representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission, consent, and authorization of each and every remaining defendant, each co-defendant having ratified or promoted the acts of the other co-defendants, such that each of them are jointly and severally liable to Plaintiffs and Class Members.

## IV.  GENERAL ALLEGATIONS

13.     Mr. Marron approached Chase in 2021 in order to obtain a mortgage on his property located at 3385 B Street, San Diego, CA 92101, San Diego County ("Property").

14.     When negotiating the mortgage, Chase offered Mr. Marron a Lock In Agreement, promising to hold the interest rate for the mortgage for a period of 45 days in exchange for the payment of a Lock-In Fee.  A true and correct copy of the Lock In Agreement is attached hereto as **Exhibit 1**.

15.     Chase was the sole drafter of the Lock In Agreement.

16.     In the Lock In Agreement, Chase represented to Mr. Marron that his interest rate would be locked in at 2.625% until March 29, 2021.  Mr. Marron's total discount points were set to 0.764%.

17.     The Lock In Agreement also came with a disclaimer, reading:

> The rate and points stated in this agreement are based on several factors, including but not limited to: loan amount, documentation type, loan type, occupancy type, property type, credit score, and loan to value (which is your loan amount compared to your property value). The final rate and points may be higher or lower based on information relating to factors such as those listed above, which may be determined after the date of this agreement.

18.     Mr. Marron agreed to the terms of the Lock In Agreement and paid the Lock-In Fees.

19.     Before the mortgage became final, Chase informed Mr. Marron that his interest rate would be higher than the interest rate promised in the Lock In Agreement.  The reason Chase gave for the increase in the interest rate was that Chase determined that one of the accounts they had previously counted towards Mr. Marron's discount points would no longer be counted towards discount points.

4

20.    There was no change in the type of accounts Mr. Marron had from when Chase made the representation of the discount points in the Lock In Agreement and when Mr. Marron executed the note and deed of trust.  Chase simply determined that they had incorrectly calculated the discount points in the Lock In Agreement despite having all of the information available to it at the time they offered the Lock In Agreement.

21.    The new interest rate Chase gave to Mr. Marron in the note and the deed of trust was 2.75%, an increase of 0.125% over the rate promised in the Lock In Agreement.  A true and correct copy of the deed of trust is attached as **Exhibit 2**.  Upon information and belief, the note is in the possession of Chase.

22.    Mr. Marron would not have signed the Lock In Agreement and would have shopped around for better interest rates if Chase had accurately calculated the discount points when it offered the Lock In Agreement.

23.    Mr. Marron could not shop around for different mortgages at the time Chase offered the final rate of 2.75% because interest rates had increased in the meantime, Mr. Marron had already paid the Lock-In Fees, and the transaction was too far along to back out at that point.

24.    Mr. Marron has timely paid his mortgage payments.

## V.  CAUSES OF ACTION

### First Cause of Action

### Breach of Contract

25.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

26.    Chase offered the Lock In Agreement to Mr. Marron, attached to the Complaint as Exhibit 1.

27.    Mr. Marron accepted the offer of the Lock In Agreement and paid the Lock-In Fee.

28.    Mr. Marron has performed all obligations under both the Lock In Agreement and the note and deed of trust that resulted from the Lock In Agreement.

29.    Chase failed to perform the Lock In Agreement by giving Mr. Marron an interest rate of 2.75 instead of 2.625% as promised by the Lock In Agreement.

30.    As a result, Mr. Marron suffered damages because he had to pay money in excessive of what his mortgage would have been if the deed of trust and note complies with the Lock Rate Agreement.

## Second Cause of Action

### Fraud in the Inducement

31.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

32.    Chase offered the Lock In Agreement to Mr. Marron in exchange for the Lock-In Fee.

33.    Chase calculated Mr. Marron's discount points based on all information and presented those discount points in the Lock In Agreement despite being under no obligation to address discount points in the Lock In Agreement.

34.    Chase knew that it would lower the discount points after Mr. Marron signed the Lock In Agreement and paid the Lock In Fee because the nature of all of Mr. Marron's accounts remained the same before the Lock In Agreement was offered and after Mr. Marron accepted it.  Therefore, Chase knew that the discount points stated in the Lock In Agreement were false.

35.    Chase provided Mr. Marron with more discount points than it would end up giving Mr. Marron when it offered Mr. Marron the note and deed of trust to get Mr. Marron to enter into the Lock In Agreement and pay the Lock-In Fee, as well as to ensure Mr. Marron would stop shopping around for other offers from other banks due to his sunk cost in paying the Lock-In Fee.

36.    As a result of Chase's inducement of Mr. Marron, Mr. Marron entered into the Lock In Agreement and ultimately entered into a note and deed of trust in reliance on Chase's representation of the discount points in the Lock In Agreement.

37.    Mr. Marron's reliance on Chase's representation of the discount points was reasonable as, even despite the notice that the discount points could be adjusted, Mr. Marron did not alter any of his accounts to cause the discount points to be altered.

38.    Mr. Marron would not have entered into the Lock In Agreement and ultimately the note and deed of trust if Chase had not misrepresented his discount points in the Lock In Agreement.

39.     As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

### Third Cause of Action

**Fraudulent Misrepresentation**

40.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

41.     Chase represented to Mr. Marron in the Lock In Agreement that his discount points were 0.764%.

42.     The actual discount rate was .125% less and the locked interest rate was 2.75%.

43.     At the time Chase represented the discount points to Mr. Marron in the Lock In Agreement, Chase knew that the representation was false because Chase had all of the information regarding Mr. Marron's accounts and calculated the discount rate itself.    Alternatively, Chase recklessly made the misrepresentation by miscalculating the discount points despite having all of the information necessary to perform the correct calculations.

44.     Chase intended on Mr. Marron to rely on its representation of the discount rate and the interest on the note and deed of trust in order to get Mr. Marron to sign the Lock In Agreement, pay the Lock-In Fees, and ultimately obtain a note and deed of trust with Chase.

45.     Mr. Marron reasonably relied as, even despite the notice that the discount points could be adjusted, Mr. Marron did not alter any of his accounts to cause the discount points to be altered.

46.     Mr. Marron would not have entered into the Lock In Agreement and ultimately the note and deed of trust if Chase had not misrepresented his discount points in the Lock In Agreement.

47.     As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

### Fourth Cause of Action

### False Promise

48.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

49.    Chase made a promise to Mr. Marron that his interest rate would be locked in at 2.625% based on a discount rate of 0.764% through the Lock In Agreement.

50.    Chase did not intend to perform this promise as made because Chase knew that ultimately it would reduce the discount points by .125%.

51.    Chase intended on Mr. Marron to rely on its representation of the discount rate and the interest on the note and deed of trust in order to get Mr. Marron to sign the Lock In Agreement, pay the Lock-In Fees, and ultimately obtain a note and deed of trust with Chase.

52.    Mr. Marron reasonably relied as, even despite the notice that the discount points could be adjusted, Mr. Marron did not alter any of his accounts to cause the discount points to be altered.

53.    Mr. Marron's reliance on Chase's false promise was a substantial factor in causing Mr. Marron harm because Mr. Marron would not have entered into the Lock In Agreement and ultimately the note and deed of trust if Chase had not misrepresented his discount points in the Lock In Agreement.  Mr. Marron would have continued shopping around for a better rate at the time he entered the Lock In Agreement.

54.    Chase ultimately offered Mr. Marron an interest rate of 2.75% instead of 2.625%.

55.    As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

### Fifth Cause of Action

### Negligent Misrepresentation

56.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

57.    Through the Lock In Agreement, Chase represented that Mr. Marron's discount rate would be 0.764% and the interest rate he was locking in was 2.625%.

58.     The actual discount rate was .125% less and the actual interest rate was 2.75%.

59.     Although Chase believed the discount rate was 0.764%, Chase had no reasonable grounds for believing that the representation was true when it made the representation because it had all the information available to it to calculate the proper discount rate and did not accurately calculate the discount rate.

60.     Chase intended on Mr. Marron to rely on its representation of the discount rate and the interest on the note and deed of trust in order to get Mr. Marron to sign the Lock In Agreement, pay the Lock-In Fees, and ultimately obtain a note and deed of trust with Chase.

61.     Mr. Marron reasonably relied as, even despite the notice that the discount points could be adjusted, Mr. Marron did not alter any of his accounts to cause the discount points to be altered.

62.     Mr. Marron was harmed because Chase ultimately offered Mr. Marron an interest rate of 2.75% instead of 2.625%.

63.     Mr. Marron's reliance on Chase's false promise was a substantial factor in causing Mr. Marron harm because Mr. Marron would not have entered into the Lock In Agreement and ultimately the note and deed of trust if Chase had not misrepresented his discount points in the Lock In Agreement.  Mr. Marron would have continued shopping around for a better rate at the time he entered the Lock In Agreement.

64.     As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

### Sixth Cause of Action

### Promissory Estoppel

65.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

66.     Chase promised Mr. Marron through the Lock In Agreement that it would lock the interest rate on Mr. Marron's note and deed of trust would be 2.625% based on Chase's own calculations of Mr. Marron's discount rates.

67.    Chase reasonably expected Mr. Marron to enter into the Lock In Agreement and pay the Lock-In Fees, as well as forebear shopping for better interest rates elsewhere, based on the promise Chase made to Mr. Marron.

68.    Mr. Marron stopped shopping for other mortgages with better interest rates based on Chase's promise, signed the Lock In Agreement, and paid the Lock-In fees.

69.    Chase later claimed that it had miscalculated the discount rate and therefore miscalculated the discount rate after Mr. Marron signed the Lock In Agreement and paid the Lock-In fees even though there was no change in Mr. Marron's accounts.

70.    As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

71.    Justice can only be served by enforcing the original interest rate of 2.625% because the increase of the rate to 2.75% was entirely due to Chase's error, and chase obtained Lock-In Fees from Mr. Marron in addition to now charging him more interest on his mortgage, increasing his payments every month.

### Seventh Cause of Action

### Negligence

72.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

73.    Through the Lock In Agreement, Chase represented that Mr. Marron's discount rate would be 0.764% and the interest rate he was locking in was 2.625%.

74.    Chase had a duty to properly calculate the discount points and locked in interest rate when it proposed the Lock In Agreement to Mr. Marron.

75.    Chase failed to properly calculate the locked in interest rate and discount points, thus breaching its duty to Mr. Marron.

76.    As a result of Chase's negligence, Mr. Marron was unable to shop around for other mortgages with more favorable interest rates and paid the Lock-In Fees.

77.     As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.

### Eighth Cause of Action

### Violation of the Unfair Competition Laws

78.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

79.     California Business & Professions Code § 17200 et seq. ("UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

California Business & Professions Code § 17203.

80.     Through the conduct alleged herein, Defendants engaged in unlawful business practices by engaging in fraudulent behavior by miscalculating the discount points Mr. Marron was entitled to, thereby causing Chase to offer a lower interest rate in the Lock In Agreement than Chase would later offer in the note and mortgage, for which this Court should issue declaratory, injunctive and/or other equitable relief, pursuant to Cal. Bus. & Prof. Code § 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

81.     As a result of Chase's conduct, Mr. Marron has suffered damages in the amount of extra money paid each month for the mortgage due to the increase of the interest rate from 2.625% to 2.75%.  Declaratory and injunctive relief is necessary to prevent and remedy this unfair competition, and pecuniary compensation alone would not afford adequate and complete relief.

82.     Mr. Marron lost money which Chase retained in the form of increased mortgage payments based on the interest rate of 2.75% instead of the 2.625% promised in the Lock In Agreement.

83.    Plaintiff has no plain, speedy, and/or adequate remedy at law that will end the unfair and unlawful business practices of Chase. As a result of the unfair and unlawful business practices described above, Mr. Marron has suffered and will continue to suffer irreparable harm. In addition, Defendants should be required to disgorge the surplus to Mr. Marron and any other unjust enrichment Chase received at Mr. Marron's expense.

**Ninth Cause of Action**

**Reformation**

84.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in this Complaint with the same force and effect, and further alleges as follows:

85.    Cal. Civ. Code § 3399 states:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code § 3399.

86.    Chase procedure the note and deed of trust from Mr. Marron through fraud.

87.    As alleged above, Chase, based on its own calculations, calculated the discount points and locked interest rate in the Lock In Agreement, offering Mr. Marron a locked in interest rate of 2.625%.

88.    Chase later claimed that those calculations were incorrect, despite there being no change in Mr. Marron's accounts between the time of the Lock In Agreement and the time of the note and deed of trust which had an interest rate of 2.75%.

89.    When presented with the note and deed of trust, Mr. Marron had no choice to but to sign the 2.75% note and deed of trust because interest rates had rose since signing the Lock In Agreement and Mr. Marron was unable to obtain any other offers as the original 2.625% rate.

90.    Because Chase obtained Mr. Marron's signature on the note and deed of trust through fraud, the Court should reform the note and deed of trust to have an interest rate of 2.625%.

/ / /

/ / /

*Marron v. JPMorgan Chase Bank, N.A.*

# VI. PRAYER FOR RELIEF

WHEREFORE, Mr. Marron pray for judgment against JPMorgan Chase Bank, N.A., as follows:

1. Compensatory Relief in an amount to be determined at trial;

2. Injunctive Relief, including but not limited to an order preventing JPMorgan Chase Bank, N.A. from continuing its illegal activities;

3. Disgorgement of profits and surplus from the money obtained from Mr. Marron over the 6.25% interest rate;

4. Reformation of the note and deed of trust to reflect an interest rate of 2.625%; and

5. Any such other and further relief as this Court may deem necessary, just, and/or proper.

Date:   January 17, 2024

Michael G. Olinik

Attorney for Plaintiff Ronald A. Marron

13

# EXHIBIT 1

## LOCK-IN AGREEMENT

Lender: JPMorgan Chase Bank, N.A.

Date: 02/12/2021

Loan Number: 1389789707

Borrower(s): Ronald A. Marron

Property Address: 3385 b Street, San Diego, CA 92102

Loan Amount: $708,000.00

Term: 30 years

Loan Type: 30 year fixed

Financing Type: Conventional

---

**PLEASE READ THE TERMS AND CONDITIONS OF THIS AGREEMENT CAREFULLY.** In this Agreement "I", "me", "my" means all of the applicants who sign below. The words "you", "your" and "Lender" mean JPMorgan Chase Bank, N.A.

**LOAN COSTS AND TERMS:** Refer to your Loan Estimate for a full description of your loan costs and terms. If you're shopping for a home, we'll provide your Loan Estimate once we receive the address of the property that will secure the loan.

☐  **I. FLOAT OPTION**
    **I don't want to lock in my interest rate,** discount points and fees at this time. Interest rates, discount points and fees are subject to change and it is my responsibility to monitor Lender's loan terms during the period in which I choose to float. I may lock in my interest rate at any time during the term of my float. Lender is required to provide the Closing Disclosure to me at least three business days before my closing can take place so I have time to review it and ask questions. To lock my rate, discount points and fees, I will contact my Mortgage Banker.

☐  **II. NOT LOCKED**
    **I understand I can't lock in an interest rate** while still shopping for a home and that a property address is required before I can lock in my interest rate.

☒  **III. LOCK-IN OPTION**
    **I want to lock in my interest rate,** discount points and fees at this time. I HAVE ELECTED THE 45 DAY LOCK OPTION AS DETAILED BELOW.

---

The rate and points stated in this agreement are based on several factors, including but not limited to: loan amount, documentation type, loan type, occupancy type, property type, credit score, and loan to value (which is your loan amount compared to your property value). The final rate and points may be higher or lower based on information relating to factors such as those listed above, which may be determined after the date of this agreement.

| | | | | |
|---|---|---|---|---|
| **INTEREST RATE:** | 2.625% | **DISCOUNT POINTS** | 0.764% | $5,409.12 |
| **EXPIRATION DATE:** | 03/29/2021 | | | |

### FEES ASSOCIATED WITH LOCK OPTIONS:

| | | |
|---|---|---|
| **LOCK IN FEE:** | 0.000% | $0.00 |
| **FLOAT DOWN FEE:** | 0.000% | $0.00 |
| **RATE CAP FEE:** | N/A | N/A |
| **EXTENDED LOCK-IN FEE:** | N/A | N/A |

NOTE: LOCK-IN, EXTENDED LOCK-IN AND, DEPENDING ON THE OPTION SELECTED, RATE CAP FEES, PAID PRIOR TO CLOSING WILL BE CREDITED AT CLOSING TOWARD CLOSING COSTS.

---

**EXPIRATION DATE:** If the Expiration Date falls on a weekend or Lender-observed holiday, the Expiration Date will extend to the next business day. If my loan does not close by the Expiration Date, I may be charged a rate lock extension fee.

☐ If checked, the interest rate is adjustable and subject to change. The initial interest rate shall be the rate specified above. I hereby acknowledge that an Adjustable Rate Mortgage ("ARM") Disclosure describing the features of my ARM has been provided to me.

### SELECT A LOCK-IN OPTION

☒ **15, 30, 45, 60, 75 or 90 DAY LOCK:** I have selected the 15, 30, 45, 60, 75 or 90 Day Lock Option as specified above which locks in my interest rate and/or points for the loan program for the applicable time period.

---



*MPX1389789707 0204 7221*

☐ **45 OR 60 DAY LOCK FLOAT DOWN OPTION:** I have selected the 45 or 60 Day Lock Float Down Option which allows me to lock in for 45 or 60 days, as specified above. If the interest rate and/or points for the loan program and lock period I have selected decrease during the 30 calendar days prior to my loan closing, then I may obtain a new lower rate and/or points (the "Float Down Rate"). I may only select a Float Down Rate that corresponds to my original lock period. For example, if my original lock-in is for 60 days, my Float Down Rate must be selected from the then current 60-day rate options that correspond to my loan program. My new Expiration Date will be the earlier of my original Expiration Date or the date 30 calendar days from my election of the Float Down Rate.

☐ **RATE CAP OPTION:** I have selected the Rate Cap Option which allows me both to lock in for a period of 90, 120, 150, 180, 270 or 360 days as specified above and the opportunity to close at a rate and/or points lower than my locked rate and/or points as specified below.

☐ **EXTENDED RATE LOCK OPTION:** I have selected the Extended Rate Lock Option which allows me to lock in for a period of 120, 150, 180, 270 or 360 days as specified above.

## FEES

**LOCK-IN, EXTENDED LOCK-IN AND RATE CAP FEES (together "Lock-In Fees"):** I agree to pay Lock-in Fees in the amount(s) stated above to lock-in my interest rate, discount points and fees. Lock-in, Extended Lock-in and, depending on the option selected on the Rate Cap, Rate Cap Fees will be credited at closing toward closing costs.

To exercise my **one-time option** to lock a rate and/or points lower than my existing locked rate and/or points, as described in the 45 or 60 Day Lock Float Down Option, Rate Cap Option paragraphs immediately above, I will contact my Mortgage Banker. I understand that I will be responsible for monitoring Lender's interest rates, discount points and fees in connection with this float down option.

**FLOAT DOWN FEE:** I agree to pay a Float Down Fee, if applicable, in the amount stated above. I understand that I must pay an upfront Float Down Fee as stated above. This Float Down Fee is in addition to any other fees which I will or have already paid to lock my interest rate, discount points and fees. **EXCEPT AS DESCRIBED BELOW, <u>LENDER WILL RETAIN THE ENTIRE FLOAT DOWN FEE AS AN EARNED FEE FOR SERVICES PROVIDED. THE FLOAT DOWN OPTION FEE ISN'T REFUNDED AT CLOSING OR APPLIED TO CLOSING COSTS.</u>**

**REFUNDABILITY OF LOCK-IN AND FLOAT DOWN FEES:** These Lock-In and Float Down Fees will be refunded to me if my loan application is denied for credit reasons. **These Lock-In and Float Down Fees won't be refunded to me if I have withdrawn my application or my loan doesn't close and fund by the Expiration Date of this Agreement, if I supply inaccurate or incomplete information or, unless approved in writing by Lender, I change the type, term, property or amount of the loan for which I applied.** The Float Down Fee won't be refunded if I fail to exercise the Float Down Option.

I won't be entitled to any interest that may accrue on the Lock-In, Extended Lock-In, Rate Cap or Float Down Fees, whether or not they are refunded to me. If I have any questions, I'll contact my Mortgage Banker.

## OTHER CONDITIONS AND DISCLOSURES

**COMMITMENT:** I understand that this agreement isn't a loan approval or a commitment to offer a loan. Lender will make a good faith effort to process my loan application and, if approved, to close and fund my loan prior to the expiration date.

**ASSIGNMENT:** I may not assign this agreement to any other person.

**VERIFICATION:** This lock-in is subject to verification of all information provided to Lender in my application and credit report. The locked interest rate, fees and points may be subject to change if my credit standing changes or unless approved in writing by Lender, if I change the type, term, property or amount of loan for which I applied, or in the event any information I have provided to Lender in my application or otherwise is found to be false or incorrect in any way, or if I have selected Lender Paid Mortgage Insurance and my loan-to-value ratio changes by date of closing.

**Borrower**

DocuSigned by:

_(signature)_
08F4093990052420...    02/13/2021
**Ronald A. Marron**                    **Date**

Lender: JPMorgan Chase Bank, N.A.

The name below will serve as our signature.

By:  Holmes Thompson Bennett III          02/12/2021
       SA-Executive Mortgage Banker               Date

NMLS ID: 693865

# EXHIBIT 2

**DOC# 2021-0363796**

May 12, 2021  08:00 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $140.00  (SB2 Atkins: $75.00)

PAGES: 17

**Recording Requested By:** Amrock
Title California Inc.

**Return To:** JPMorgan Chase Bank,
N.A. Chase Records Center Attn:
Collateral
Trailing Documents, RE:MC 8000
700 Kansas Lane
Monroe, LA 71203

**Property Address:** 3385 b Street, San
Diego, CA 92102

**Parcel Number:** 539-571-09-00

# Deed of Trust

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** *"Security Instrument"* means this document, which is dated April 27, 2021, together with all Riders to this document.

**(B)** *"Borrower"* is  Ronald A. Marron, Trustee of the 2013 Ronald A. Marron Trust Dated September 26, 2013 . Borrower's address is 3385 b St, San Diego, CA 92102. Borrower is the trustor under this Security Instrument.

**(C)** *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized and existing under the laws of the United States of America. Lender's address is 1111 Polaris Parkway, Columbus, OH 43240-2050. Lender is the beneficiary under this Security Instrument.

**(D)** *"Trustee"* is JPMorgan Chase Bank, N.A..

**(E)** *"Note"* means the promissory note signed by Borrower and dated April 27, 2021. The Note states that Borrower owes Lender Seven hundred two thousand and 00/100 Dollars (U.S. $702,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2051.

**(F)** *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Trust Rider |

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

Initials: _____

1389789707
Form 3005 1/01
02/21
Page 1 of 14



*MPX1389789707 0233 7003*

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** *"Escrow Items"* means those items that are described in Section 3.

**(M)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of San Diego [Name of Recording Jurisdiction] See Legal Description

Parcel ID Number: 539-571-09-00 which currently has the address of 3385 b Street [Street] San Diego [City], California 92102 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

Initials: 

1389789707
Form 3005 1/01
02/21
Page 2 of 14

*MPX1389789707 0233 7003*

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y



1389789707
Form 3005 1/01
02/21
Initials: _____ Page 3 of 14

*MPX1389789707 0233 7003*

Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

1389789707
Form 3005 1/01
02/21
Page 4 of 14

2021042721.1.0.3543-J20210222Y

Initials: 

*MPX1389789707 0233 7003*

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Initials: _____ Page 5 of 14


*MPX1389789707 0233 7003*

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

1389789707
Form 3005 1/01
02/21
Page 6 of 14

2021042721.1.0.3543-J20210222Y

Initials: 

*MPX1389789707 0233 7003*

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Page 7 of 14

Initials: _____

*MPX1389789707 0233 7003*

Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Page 8 of 14

Initials: _____



*MPX1389789707 0233 7003*

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Page 9 of 14

Initials: 

*MPX1389789707 0233 7003*

Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

1389789707
Form 3005 1/01
02/21
Page 10 of 14

2021042721.1.0.3543-J20210222Y

Initials: 

*MPX1389789707.0233.7003*

result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Initials: _____    Page 11 of 14

*MPX1389789707 0233 7003*



**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

1389789707
Form 3005 1/01
02/21
Page 12 of 14

Initials: _____



of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Trustee**

_Ronald A. Marron_ _____ 4/27/2021 |

**RONALD A. MARRON, Individually**          **Date**
**and as Trustee of the 2013 RONALD**         *Seal*
**A. MARRON TRUST under trust**
**instrument dated September 26, 2013.**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

1389789707
Form 3005 1/01
02/21

2021042721.1.0.3543-J20210222Y

Initials: _RAM_

Page 13 of 14

*MPX1389789707 0233 7003*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

**County of San Diego**

On _APRIL 27, 2021_, before me, _PAUL Filipowicz_, Notary Public, personally appeared

_Ronald A. Marron_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Notary Public_
My commission expires: _09-13-2025_

```
PAUL FILIPOWICZ
Notary Public - State of Idaho
Commission Number 20191881
My Commission Expires Sep 13, 2025
```

**Loan Origination Organization:** JPMorgan Chase Bank, N.A.
**NMLS ID:** 399798
**Loan Originator:** Holmes Thompson Bennett III
**NMLS ID:** 693865

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

2021042721.1.0.3543-J20210222Y

Initials: _R Am_

1389789707
Form 3005 1/01
02/21
Page 14 of 14

*MPX1389789707 0233 7003*

# Inter Vivos Revocable Trust Rider

**Definitions Used in this Rider.**

   **(A) "Revocable Trust."** The 2013 RONALD A. MARRON TRUST created under trust instrument dated September 26, 2013.

   **(B) "Revocable Trust Trustee(s)."** RONALD A. MARRON, trustee(s) of the Revocable Trust.

   **(C) "Revocable Trust Settlor(s)."** RONALD A. MARRON, settlor(s), grantor(s), or trustor(s) of the Revocable Trust.

   **(D) "Lender."** JPMorgan Chase Bank, N.A.

   **(E) "Security Instrument."** The Deed of Trust and any riders thereto of the same date as this Rider given to secure the Note to Lender of the same date and covering the Property (as defined below).

   **(F) "Property."** The property described in the Security Instrument and located at:

3385 b Street, San Diego, CA 92102

[Property Address]

THIS INTER VIVOS REVOCABLE TRUST RIDER is made April 27, 2021, and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), and the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

**Additional Borrower(s).**

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Instrument.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Inter Vivos Revocable Trust Rider.

**Trustee**



                                                  4/27/2021

**Ronald A. Marron, Individually and**                           **Date**
**as Trustee of the 2013 RONALD**                                 *Seal*
**A. MARRON TRUST under trust**
**instrument dated September 26, 2013.**

Inter Vivos Revocable Trust Rider-CA
© 2012 Wolters Kluwer Financial Services, Inc.
All rights reserved.

BY SIGNING BELOW, the undersigned Revocable Trust Settlor(s) acknowledges all of the terms and covenants contained in this Inter Vivos Revocable Trust Rider and agrees to be bound thereby.

**Settlor**



_____    4/27/2021
RONALD A. MARRON                   Date
                                   *Seal*

Inter Vivos Revocable Trust Rider-CA
© 2012 Wolters Kluwer Financial Services, Inc.
All rights reserved.

1389789707

2021042721.1.0.3543-J20210222Y

03/20
Page 2 of 2

*MPX1389789707 0197 1946*



EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 539-571-09-00

Land situated in the City of San Diego in the County of San Diego in the State of CA

LOTS 1, 2 AND 3 BLOCK 148 OF CHOATES ADDITION, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 167, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 1886.

Commonly known as:   3385 B ST, San Diego, CA 92102-2427

NOTE: The property address, tax parcel identification number, and property type are provided solely for informational purposes and are not insurable for this transaction.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JPMORGAN CHASE BANK, N.A., a national banking association, and DOES 1- 10, INCLUSIVE

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/16/2024** at 10:43:00 AM
Clerk of the Superior Court
By Gabriel Lopez,Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RONALD A. MARRON, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California for the County
330 W Broadway
of San Diego, Central Division, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 37-2024-00006839-CU-BC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael G. Olinik, The Law Office of Michael G. Olinik, 501 W. Broadway, Ste. 800, San Diego, CA 92101, (619) 780-5523

| DATE: | 02/20/2024 | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | G. Lopez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br><br>Michael G. Olinik (SBN #291020)<br>The Law Office of Michael G. Olinik<br>501 W. Broadway Ste. 800, San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 780-5523          FAX NO.(Optional):<br><br>E-MAIL ADDRESS (Optional): michael@oliniklaw.com<br><br>ATTORNEY FOR (Name): Ronald A Marron | FOR COURT USE ONLY |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☒ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., SUITE 1000, VISTA, CA 92081
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

| PLAINTIFF(S)<br><br>Ronald A. Marron | JUDGE<br><br>Hon. Joel R. Wohlfeil |
|---|---|
| DEFENDANT(S)<br><br>JPMorgan Chase Bank NA | DEPT<br><br>C-73 |
| **NOTICE OF PAYMENT OF ADVANCE JURY FEE** | CASE NUMBER<br>37-2024-00006839-CU-BC-CTL |

## NOTICE

TO:     The above court, the clerk thereof, and all concerned parties:

The statutory advance jury fee is tendered herewith on behalf of the

☒ Plaintiff  ☐ Defendant  Ronald A Marron
_____
                                          (Full Name)

Parcel No.(s) *(if appropriate)* _____

Date: July 15, 2024                        _____
                                                                          Signature

---

## DECLARATION OF SERVICE BY MAIL

I declare that: I am over the age of 18 years and not a party to this case; I am employed in, or am a resident of the County where the mailing took place; and my residence or business address is:
501 W. Broadway, Ste. 800, San Diego, CA 92101


I served the **NOTICE OF PAYMENT OF ADVANCE JURY FEE** by placing a true copy in separate envelopes addressed to each addressee, respectively, as follows:
Bryant Delgadillo
PIB Law
695 Town Center Drive, 16th Floor
Costa Mesa, CA 92626

I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the United States Postal Service, on the date shown below at *(City and State)* San Diego, CA

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Date: July 15, 2024 _____

Michael G. Olinik _____          _____
Type or Print Name                                                        Signature

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 291020 | FOR COURT USE ONLY |
|---|---|
| NAME: Michael G. Olinik<br>FIRM NAME: The Law Office of Michael G. Olinik<br>STREET ADDRESS: 501 W. Broadway, Ste. 800<br>CITY: San Diego     STATE: CA     ZIP CODE: 92101<br>TELEPHONE NO.: (619) 780-5523     FAX NO.:<br>E-MAIL ADDRESS: michael@oliniklaw.com<br>ATTORNEY FOR (Name): Ronald A. Marron | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central - Hall of Justice

Plaintiff/Petitioner: Ronald A. Marron
Defendant/Respondent: JPMorgan Chase Bank, N.A.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2024-00006839-CU-BC-CTL |
|---|---|

TO (insert name of party being served): JPMorgan Chase Bank, N.A.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: Via E-mail July 17, 2024

Michael G. Olinik
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other *(specify):*
   Civil Case Cover Sheet; Notice of Case Assignment, Alternative Dispute Resolution (ADR) Information, Stipulation to Use Alternative Dispute Resolution, First Amended Complaint; CMC Statement; Jury Fee Deposit

*(To be completed by recipient):*

Date this form is signed: _____

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 291020 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER: 291020

NAME: Michael G. Olinik

FIRM NAME: The Law Office of Michael G. Olinik

STREET ADDRESS: 501 W. Broadway Ste. 800

CITY: San Diego    STATE: CA    ZIP CODE: 92101

TELEPHONE NO.: (619) 780-5523    FAX NO.:

EMAIL ADDRESS: michael@oliniklaw.com

ATTORNEY FOR (name): Ronald A. Marron

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS: 330 W. Broadway

MAILING ADDRESS: 330 W. Broadway

CITY AND ZIP CODE: San Diego 92101

BRANCH NAME: Central - Hall of Justice

PLAINTIFF/PETITIONER: Ronald A. Marron

DEFENDANT/RESPONDENT: JPMorgan Chase Bank N.A.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):**  [x] **UNLIMITED CASE** (Amount demanded exceeds $35,000)   [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 37-2024-00006839-CU-BC-CTL |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: July 19, 2024    Time: 1:30 p.m.    Dept.: C-73    Div.:    Room:

Address of court (if different from the address above):

[x]  **Notice of Intent to Appear by Telephone, by (name):** Michael G. Olinik (VIa Teams)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):

   a. [x] This statement is submitted by party (name): Ronald A. Marron

   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)

   a. The complaint was filed on (date): January 18, 2024

   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)

   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [x] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served (specify names and explain why not):

      (2) [x] have been served but have not appeared and have not been dismissed (specify names):
         JPMorgan Chase Bank, N.A.

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**

   a. Type of case in  [x] complaint    [ ] cross-complaint    (Describe, including causes of action):

**Page 1 of 5**

| | **CASE MANAGEMENT STATEMENT** | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER:   Ronald A. Marron | CASE NUMBER: |
| DEFENDANT/RESPONDENT:   JPMorgan Chase Bank N.A. | 37-2024-00006839-CU-BC-CTL |

4. b.   Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**

The party or parties request   ☒ a jury trial   ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**

a.   ☐   The trial has been set for   *(date):*

b.   ☒   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

Plaintiff wishes to pursue a class action, so need time to secure new counsel and go through class discovery

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.   ☒   days *(specify number):* ten days

b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial   ☐ by the attorney or party listed in the caption   ☒ by the following:

a.   Attorney: To be determined.

b.   Firm:

c.   Address:

d.   Telephone number:                                             f.   Fax number:

e.   Email address:                                                    g.   Party represented:

☐   Additional representation is described in Attachment 8.

9.   **Preference**

☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**

a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)   For parties represented by counsel: Counsel   ☒ has   ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party   ☐ has   ☐ has not   reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).

(1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER:  Ronald A. Marron | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  JPMorgan Chase Bank N.A. | 37-2024-00006839-CU-BC-CTL |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER:  Ronald A. Marron | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  JPMorgan Chase Bank N.A. | 37-2024-00006839-CU-BC-CTL |

**11. Insurance**

a. ☐  Insurance carrier, if any, for party filing this statement  *(name):*

b.  Reservation of rights: ☐ Yes  ☐ No

c. ☐  Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy    ☐ Other  *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐  There are companion, underlying, or related cases.

    (1)  Name of case:

    (2)  Name of court:

    (3)  Case number:

    (4)  Status:

    ☐  Additional cases are described in Attachment 13a.

b. ☐  A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒  The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*
Motion for Class Certification (To Be Determined)

**16. Discovery**

a. ☐  The party or parties have completed all discovery.

b. ☒  The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Marron to JP Morgan | Written discovery (class) | August 2024 |
| Marron to JP Morgan | Written discovery (merits) | January 2025 |
| Marron to JP Morgan | Depositions | February 2025 |

c. ☐  The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER:  Ronald A. Marron | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  JPMorgan Chase Bank N.A. | 37-2024-00006839-CU-BC-CTL |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
Plaintiff is looking for new counsel to serve as class counsel with current counsel to withdraw.  Plaintiff requests the CMC be continued 120 days.

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):*  0

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 15, 2024

Michael G. Olinik
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7073 |

| PLAINTIFF(S) / PETITIONER(S): | Ronald A Marron |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | JPMorgan Chase Bank NA |
|---|---|

MARRON VS JPMORGAN CHASE BANK NA [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2024-00006839-CU-BC-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Joel R. Wohlfeil                                      Department: C-73

**COMPLAINT/PETITION FILED:** 01/18/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 07/19/2024 | 01:30 pm | C-73 | Joel R. Wohlfeil |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>TIME FOR SERVICE AND RESPONSE:</u> The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>JURY FEES:</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>COURT REPORTERS:</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

<u>ALTERNATIVE DISPUTE RESOLUTION (ADR):</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

MC-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | **FOR COURT USE ONLY** |
|---|---|
| Michael G. Olinik (SBN # 291020)<br>The Law Office of Michael G. Olinik<br>501 W. Broadway, Ste. 800<br>San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 780-5523    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* michael@oliniklaw.com<br>ATTORNEY FOR *(Name):* Ronald A. Marron | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central - Hall of Justice

| PLAINTIFF/PETITIONER: Ronald A. Marron | CASE NUMBER:<br>37-2024-00006839-CU-BC-CTL |
|---|---|
| DEFENDANT/RESPONDENT: JPMorgan Chase Bank, N.A. | JUDICIAL OFFICER:<br>Hon. Joel R. Wohlfeil |
| **NOTICE OF CHANGE OF ADDRESS OR OTHER<br>CONTACT INFORMATION** | DEPT.:<br>C-73 |

1. **Please take notice** that, as of *(date):* August 23, 2024
   ☐ the following self-represented party or
   ☒ the attorney for:
   a. ☒ plaintiff *(name):* Ronald A. Marron
   b. ☐ defendant *(name):*
   c. ☐ petitioner *(name):*
   d. ☐ respondent *(name):*
   e. ☐ other *(describe):*

   has **changed his or her address** for service of notices and documents or other contact information in the above-captioned action.

   ☐ A list of additional parties represented is provided in Attachment 1.

2. The **new address** or other contact information for *(name):* Michael G. Olinik, Esq.
   is as follows:
   a. Street: 501 W. Broadway Ste. 800
   b. City: San Diego
   c. Mailing address *(if different from above):*
   d. State and zip code: CA 92101
   e. Telephone number: (619) 780-5523
   f. Fax number (if available):
   g. E-mail address (if available): michael@oliniklaw.com

3. **All notices and documents** regarding the action should be sent to the above address.

Date: August 23, 2024

Michael G. Olinik
_____
(TYPE OR PRINT NAME)

▶  _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
MC-040 [Rev. January 1, 2013]

**NOTICE OF CHANGE OF ADDRESS OR OTHER
CONTACT INFORMATION**

Cal. Rules of Court, rules 2.200 and 8.816
www.courts.ca.gov

**MC-040**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ronald A. Marron | CASE NUMBER: |
| DEFENDANT/RESPONDENT: JPMorgan Chase Bank, N.A. | 37-2024-00006839-CU-BC-CTL |

**PROOF OF SERVICE BY FIRST-CLASS MAIL**
**NOTICE OF CHANGE OF ADDRESS OR OTHER CONTACT INFORMATION**

*(NOTE: This page may be used for proof of service by first-class mail of the Notice of Change of Address or Other Contact Information. Please use a different proof of service, such as Proof of Service—Civil (form POS-040), if you serve this notice by a method other than first class-mail, such as by fax or electronic service. You cannot serve the Notice of Change of Address or Other Contact Information if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. At the time of service, I was at least 18 years old and **not a party to this action.**

2. I am a resident of or employed in the county where the mailing took place. My residence or business address is *(specify):*
501 W. Broadway, Ste. 800, San Diego, CA 92101

3. I served a copy of the *Notice of Change of Address or Other Contact Information* by enclosing it in a sealed envelope addressed to the persons at the addresses listed in item 5 and *(check one):*

   a. ☒ deposited the sealed envelope with the United States Postal Service with postage fully prepaid.

   b. ☐ placed the sealed envelope for collection and for mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

4. The *Notice of Change of Address or Other Contact Information* was placed in the mail:

   a. on *(date):* August 23, 2024

   b. at *(city and state):* San Diego, CA

5. The envelope was addressed and mailed as follows:

   a. Name of person served:
   Marcos Sasso

   Street address: 2049 Century Park East Ste. 700

   City: Los Angeles

   State and zip code: CA 90067

   c. Name of person served:

   Street address:

   City:

   State and zip code:

   b. Name of person served:

   Street address:

   City:

   State and zip code:

   d. Name of person served:

   Street address:

   City:

   State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 23, 2024

Michael G. Olinik
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**NOTICE OF CHANGE OF ADDRESS**
**OR OTHER CONTACT INFORMATION**

1  Michael G. Olinik    SBN # 291020
   The Law Office of Michael G. Olinik
2  501 W. Broadway, Suite 800
   San Diego, CA 92101
3  (619) 780-5523
   michael@oliniklaw.com
4
   Attorney for Plaintiff Ronald A. Marron
5  and the Proposed Class

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                       **COUNTY OF SAN DIEGO**
9                       **CENTRAL DIVISION**

10 RONALD A. MARRON, on behalf of          Case No:  37-2024-00006839-CU-BC-CTL
   himself and all others similar situation, and
11 the general public,                     **NOTICE OF CONTINUED CASE**
                                           **MANAGEMENT CONFERENCE**
12             Plaintiff,
                                           Dept.: C-73
13      v.                                 Judge:  Hon. Joel R. Wohlfeil
                                           Date:    September 26, 2024
14 JPMORGAN CHASE BANK, N.A., a            Time:   2:30 p.m.
   national banking association, and DOES 1-
15 10, INCLUSIVE,

16             Defendant.

17

18

19 **TO ALL INTERESTED PARTIES:**

20         PLEASE TAKE NOTICE that the continued Case Management Conference in the above

21 captioned matter will take place on September 26, 2024 at 2:30 p.m. in Department C-73 of the Superior

22 Court of California, San Diego County, Hall of Justice, 330 W. Broadway, San Diego, California

23 92101.  Plaintiff was ordered to give notice of this date.

24 Date:   August 23, 2024

25                                         _____

26                                         Michael G. Olinik

27                                         Attorney for Plaintiff Ronald A. Marron

28

                                           1

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael G. Olinik (SBN # 291020)<br>The Law Office of Michael G. Olinik<br>501 W. Broadway Ste. 800<br>San Diego, CA 92101 | |

TELEPHONE NO.: (619) 780-5523    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* michael@oliniklaw.com
ATTORNEY FOR *(Name):* Ronald A. Marron

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central - Hall of Justice

PETITIONER/PLAINTIFF: Ronald A. Marron
RESPONDENT/DEFENDANT: JPMorgan Chase Bank, N.A.

| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>37-2024-00006839-CU-BC-CTL |
|---|---|

***(Do not use this Proof of Service to show service of a Summons and Complaint.)***

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   501 W. Broadway, Ste. 800, San Diego, CA 92101

3. On *(date):* August 23, 2024     I mailed from *(city and state):* San Diego, CA
   the following **documents** *(specify):*
   Notice of Continued Case Management Conference

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*

   a. ☒ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.

   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:

   a. **Name** of person served: Marcos Sasso

   b. **Address** of person served:
      Morgan, Lewis & Bockius LLP, 2049 Century Park East, Suite 700, Los Angeles, CA 90067

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 23, 2024

Michael G. Olinik
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)    ▶ *(SIGNATURE OF PERSON COMPLETING THIS FORM)*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2024-00006839-CU-BC-CTL        CASE TITLE: Marron vs JPMorgan Chase Bank NA [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
    (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
    (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_
    (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>**Local ADR Programs for Civil Cases**</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>**Legal Representation and Advice**</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | *FOR COURT USE ONLY* |
|---|---|
| STREET ADDRESS:    330 West Broadway | |
| MAILING ADDRESS:    330 West Broadway | |
| CITY, STATE, & ZIP CODE:  San Diego, CA  92101-3827 | |
| BRANCH NAME:        Central | |

| PLAINTIFF(S):    Ronald A Marron |
|---|
| DEFENDANT(S):  JPMorgan Chase Bank NA |
| SHORT TITLE:    MARRON VS JPMORGAN CHASE BANK NA [IMAGED] |

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2024-00006839-CU-BC-CTL |
|---|---|

Judge: Joel R. Wohlfeil                                                    Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                            ☐ Binding private arbitration

☐ Voluntary settlement conference (private)      ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                   ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                Name of Defendant

_____          _____
Signature                                        Signature

_____          _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____          _____
Signature                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  02/15/2024

_____
JUDGE OF THE SUPERIOR COURT